

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2006

# Nadbitova v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1270

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Nadbitova v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1484.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1484

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1270

LARISSA NADBITOVA;
SERGUEI NADBITOV,
Petitioners

v.

ALBERTO R. GONZALES,
Attorney General of the United States
Respondent

(*Substituted pursuant to Rule 43(c), Fed. R. App. P.)

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA Nos. A95-369-666 & A95-369-667)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 14, 2006

Before:  SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*

(Filed:  March 3, 2006 )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Larissa and Serguei Nadbitova petition for review of an order of the Board of Immigration Appeals affirming the immigration judge's order of removal. We will deny the petition and affirm the order of the BIA.

I.

Because we write only for the benefit of the parties, our recitation of the facts will be abbreviated.

The Nadbitovas, husband and wife, are Russian natives and citizens, who were admitted as nonimmigrant visitors to the United States at New York City in August 2000, authorized to stay until November 28, 2000. They overstayed their three-month authorization, and Larissa Nadbitova filed for asylum and for withholding of removal, or, alternatively, for voluntary departure. Her husband was a derivative of her claims. Their application was filed either in November or December 2001, a subject of debate. They were charged with being removable pursuant to 8 U.S.C. § 1227(a)(1)(B).

At their first hearing in June 2002, the IJ ordered briefing on the timeliness of their asylum application because it appeared the Nadbitovas failed to file within one year of their arrival, as required by 8 U.S.C. § 1158(a)(2)(B). At the same hearing, the IJ advised the Nadbitovas that no public documents from Russia would be admitted into evidence unless certified under 8 C.F.R. § 287.6. The Nadbitovas encountered problems getting certain documents from Russia, and their transition to a new attorney caused other

2

problems because the new attorney failed to notify the court and the former attorney of the Nadbitovas' decision to change attorneys.

Both their new attorney and their former attorney showed up at the next hearing in July 2003, and the Nadbitovas sorted out their representation. The new attorney told the court he was ready to proceed. The Nadbitovas had obtained the documents—"citizen internal passports," App. 77—but the documents were not certified, and the IJ excluded them. The Nadbitovas then withdrew their application at the hearing because, as they now contend, they believed that without the documents their application would likely fail. The IJ found they qualified for voluntary departure, but the Nadbitovas then stated on the record that they had no intention of leaving the country. Accordingly, the IJ denied voluntary departure. Because the Nadbitovas had withdrawn with prejudice their application for asylum and for withholding of removal, the IJ entered an order of removal.

The Nadbitovas raise several issues in their petition, contending the IJ and BIA deprived them of due process of law under the Fifth Amendment.

We have jurisdiction under 8 U.S.C. § 1252(a)(1), as amended by the REAL ID Act of 2005, § 106, Pub. L. No. 109-13, Div. B., 119 Stat. 231.

II.

Because the BIA issued an opinion on the merits, we review the BIA's rather than the IJ's decision. *Li v. Attorney Gen.*, 400 F.3d 157, 162 (3d Cir. 2005). We review de novo whether the Nadbitovas' procedural due process rights were violated. *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (citing *Abdulrahman v. Ashcroft*, 330 F.3d

3

587, 596–97 (3d Cir. 2003)). To prevail on a due process challenge to the BIA's order, the Nadbitovas must make an initial showing of substantial prejudice. *Id.* at 448 (citing *DeZavala v. Ashcroft*, 385 F.3d 879, 883 (5th Cir. 2004)). No procedural due process claim can succeed unless the Nadbitovas show they were eligible for the relief they sought. *Id.*

First, the Nadbitovas contend the IJ denied their new attorney a continuance to prepare. The BIA accurately described the record, in which it appears the new attorney might have requested a continuance in advance of the hearing, but he withdrew that request on the day of the hearing. Also at the hearing, the IJ gave the new attorney as much time as he needed to confer with the former attorney, who was also present. After this off the record consultation, the new attorney told the IJ he was ready to proceed. There is no due process violation here.

Second, the Nadbitovas claim a due process violation when the IJ denied their attorney's request for an adjournment to counsel them about voluntary departure. But there is no protected liberty interest in the discretionary relief of voluntary departure, nor is there a protected interest in even being *considered* for the discretionary relief. *See, e.g.*, *United States v. Torres*, 383 F.3d 92, 104–06 (3d Cir. 2004). It follows that the IJ did not violate their due process right to counsel when the IJ denied the request for an adjournment. In any event, there was no substantial prejudice. The IJ fully explained voluntary departure, on the record, and the Nadbitovas stated they understood the

4

explanation. Their attorney neither objected to the IJ's explanation nor availed himself of the opportunity to examine the Nadbitovas further.

Third, the Nadbitovas seek review of the IJ's refusal to admit their passports[1] into evidence because the documents were not certified in accordance with 8 C.F.R. § 287.6, which essentially requires consular certification. Reading § 287.6 as though it provided the only means of authenticating records before an immigration judge was an error of law. *Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 532–33 (3d Cir. 2004) (citing *Khan v. INS*, 237 F.3d 1143 (9th Cir. 2001)). But the Nadbitovas were not prejudiced. The BIA properly found no indication that these documents would satisfy the type of corroborating evidence required for a successful asylum and withholding application in this case, where the Nadbitovas had been given one year to brief the key issue of the timeliness of their application but had failed to do so by the time of the hearing. The passports would only have corroborated that they were from the Republic of Kalmykiya, which is part of Russia. But their claim for persecution was based on their religion, Baptist. Moreover, the Nadbitovas were free to testify as to their Kalmyk nationality—testimony requires no authentication—but failed to do so. We find no evidence that their persecution claim

---

[1]There is no evidence on the record that the documents the Nadbitovas sought from Russia were anything other than their "citizen internal passports." App. 77.

5

hinged on the admission of these passports.[2]  Accordingly, there is no substantial prejudice.

Fourth, the Nadbitovas seek review of the IJ's decision to allow Larissa Nadbitova to withdraw her asylum application (from which Serguei Nadbitova was derivative) with prejudice, alleging the IJ did not ascertain if the withdrawal was voluntary.  Their lawyer told the IJ that Mrs. Nadbitova wished to withdraw her application.  The IJ then put Mrs. Nadbitova on the witness stand.  As the BIA noted, the IJ explained to Mrs. Nadbitova the consequences of this withdrawal fully and questioned her extensively.  She stated that she understood the explanation.  When the judge asked her if she wished to withdraw her application for political asylum and for withholding of removal, she responded "Yes." App. 87.  Finally, their attorney neither objected to the IJ's explanation nor availed himself of the opportunity to examine his clients further.  We see no error.

Fifth, the Nadbitovas contend they were "wrongfully denied voluntary departure" by the IJ, Petitioners' Br. 12, violating due process.  Initially, there is a question of jurisdiction.  As the government correctly argues, before the REAL ID Act, we lacked jurisdiction to review decisions of the BIA or an IJ denying voluntary departure.  8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for

---

[2]In *Gui Cun Liu v. Ashcroft*, we held the IJ's failure to admit certain documents influenced the IJ's ensuing credibility determination, and we remanded.  372 F.3d 529, 534 (3d Cir. 2004) ("[R]emand is appropriate where, as here, we have made a legal determination (e.g., regarding admissibility of evidence) that fundamentally upsets the balancing of facts and evidence upon which an agency's decision is based.").  No such fundamental unbalancing is present here.

6

an order of voluntary departure . . . ."); § 1252(a)(2)(B)(i) ("Notwithstanding any other provision of law . . . no court shall have jurisdiction to review any judgment regarding the granting of relief under section . . . 1229c . . . ."). The REAL ID Act made no change, and discretionary determinations continue to fall outside the jurisdiction of the courts. § 1252(a)(2)(B)(ii).

But we have jurisdiction over any due process claim because the REAL ID Act allows jurisdiction over constitutional claims. § 1252(a)(2)(D) (stating that nothing in the Act "which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims"). To the extent the Nadbitovas assert a constitutional violation, we have jurisdiction.

But their claim nonetheless fails. As noted, there is no protected liberty interest in voluntary departure or even in being considered for voluntary departure. *See*, *e.g.*, *Torres*, 383 F.3d at 104–06. Even assuming there were such an interest, after the Nadbitovas were found to qualify for voluntary departure they insisted on preserving their right to appeal. The government immediately moved to reopen the proceedings, contending their preservation of appeal belied the Nadbitovas' statement that they would voluntarily leave the United States. The IJ questioned them on the record, and the Nadbitovas insisted that they did not intend to leave the United States, and instead stated that they wanted to stay in the United States indefinitely to raise their children. Accordingly, the BIA did not commit constitutional error in affirming the IJ's rescission of the prior grant of voluntary departure when the underlying factual basis for it—that the

7

Nadbitovas would leave voluntarily—was eroded. There was no violation of their procedural due process rights.

III.

For the foregoing reasons, we will deny the petition for review and affirm the order of the BIA.